The next case on the calendar for today is number 22-278, Eduardo v. The Roman Catholic Bishop. Mr. Phillips, whenever you're ready. May it please the court, I'm here today on behalf of the appellant Philip Eduardo. And I'd like to commence by focusing on the idea that at the heart of this case is the question of whether or not the district court disregarded what was and what continues to be a growing body of child's victim act jurisprudence, both in the state and overwhelmingly in the state court where there are thousands of cases pending, and also in the federal court where a small number of cases have been removed that have addressed the long arm jurisdiction question that the district court grappled with below. And I would suggest to the court that the evolving and overwhelming trend in these cases, almost to the point of its being unanimous, not quite but close, has been that churches, schools, athletic organizations whose agents travel to New York and then perpetrate acts of sexual abuse on minors, render not just the perpetrator but also the organization on whose behalf they act as agents. But doesn't each one of those cases depend on the particular facts and specifically the facts of the foreseeability of the tort being committed within the context of the agency? I think that's exactly correct. And again... So what did we have here that made the tort foreseeable? In other words, let's assume that Magaldi was the agent of the church, sent by the church on church business to meet with I'm sorry, 302, in regard to the foreseeability of the tort. That's very bad English. Your Honor, if I could parse that, I think you actually asked a couple of questions, and I think I can answer all of them pretty quickly. First of all, Magaldi... Let me put it more simply. I'll go through it. Crash through it. What reason did the church have to believe that the sexual abuse was foreseeable? The answer to that, Your Honor, is as pleaded. It's made abundantly clear that this priest had a long and prolonged history of abusing Philip Eduardo for years. Secondly, he had a history of abusing others that goes back further. Third, the bishop himself had conceded, and it's stated in the complaint, that they were aware of a severe problem with priests or numbers of priests... Excuse me? In regard to Magaldi? With respect to... Were they aware of a problem with Magaldi? Because I don't see any allegation about that. Your Honor, the way these cases unfold is that in discovery... We're litigating thousands of these. Magaldi is asserted in the complaint to have been an abuser and to have abused people. The question of notice gets developed in the fact discovery thing, which, of course, plaintiffs were not permitted, nor did the court hold an evidentiary hearing. And at the heart of these cases, and I can represent to the court that my firm has been involved in the prosecution of many of these, at the heart of the discovery, which a plaintiff should have been entitled to take, that questions of what was known, whether there was notice, whether there was constructive notice, what witnesses observed what had gone on before this with Magaldi. What we're at bottom concerned about with regard to questions of personal jurisdiction is whether or not it would be reasonable, as the judge that I was getting to, reasonably foreseeable to defendants to think that they're going to be hauled into court in New York. And so there still has to be, even in the pre-discovery stage, you have to be making an assertion about whether or not it was foreseeable to them that Magaldi would engage in this tort. And the fact of the church and maybe the supervisors knowing that other individuals had been accused of abuse, but there's nothing with regard to this individual, there's still, I think, a hurdle in terms of personal jurisdiction. Well, Your Honor, two aspects of that. As the complaint alleges, they were paying for hotel rooms and a hotel suite for a priest and a young boy. That raises sets of questions that sets a concern against the background of what was going on generally with priests and young boys. But secondly, I think I have the same answer for Your Honor as I had for Judge Stein, which is that we should have been permitted in discovery to develop the facts to demonstrate this notice. And that's what's happening. And the standard, I would suggest, for jurisdiction is not the standard for summary judgment or even the standard for 12b-6. It's a very, very liberal standard. And to deprive in a circumstance like this with an allegation, and again, the allegation were hundreds of acts of abuse in Rhode Island that existed before this trip to New York. Now, if that doesn't create a reasonable basis for a court to conclude that there might well be notice specific to McGalvey and this terribly abused young boy, I think that would be error. And I think that it requires reversal. This is an appalling fact pattern. And at the end of the day, this lad was entitled to his day in court and the opportunity to develop a record. He certainly can talk, and it's fairly to be derived from the amended complaint that was before the district court, that this was a prolonged, not an isolated event, and that viewing the totality of the circumstances, 300 rapes over the course of many, many years, I think that it would be unjust to simply say, well, that's not enough. It's a very liberal standard. And I have, of course, some rebuttal time, but I appreciate your honors listening to what I've had to say. Thank you. Thank you, Counselor. We reserve three minutes for rebuttal. We'll hear from Mr. Merton. May it please the court. I am Howard Merton, and I'm appearing on behalf of the Bishop of the Diocese of Providence and the related appellees. And I'd like to address two bases for the court's affirmation of the district court's decision below. One is obviously the jurisdictional issue and whether or not the district court correctly ruled with respect to the elements of the long-arm statute in New York that there is no jurisdiction here. And the elements of those long-arm statutes are important here, and that's what the court looked to below. The second piece, which I think is relevant even more so based on my brother's comments, is the issue preclusion matter, which the court did not address, but I think this court can address because it's a pure statement of pure question of law based on facts that are in the record already and are very simple in terms of what happened in the Rhode Island court and what's the effect of that. And I say that because Plaintiff Appellate has argued that this plaintiff is entitled to a day in court, and he's argued issues of factual discovery. All of that has been, was, and could have been available to the plaintiff in the Rhode Island case had it not been dismissed. But let's go to the jurisdictional question because I think there plaintiff has alleged two bases, 302A1 and 302A2. The trial court jumped to A1, A2, sorry, and so I'd like to do that as well. And if you look to the elements of A2, I think they're agreed to by authorities and they require that there be an, either the defendant themselves or the agent has some connection with the state and commits the tort in the state. I think there's no contention whatsoever that none of these appellee defendants committed a tort in the state or did anything in the state. Plaintiff's argument comes down to whether or not a Magaldi can be considered an agent that would subject these Rhode Island defendants to jurisdiction in this court. And there are a number of elements of the court found on two bases that this Mr. Magaldi could not be an agent. One of which is because that agent has to act for the benefit of the principal when they're committing the acts that subject them to jurisdiction. And the other is that they had no knowledge or consent from the appellees. I'm going to focus first on the benefit of the principal because I think that is a critical and dispositive issue. There is a long line of cases that was brought to the, that the district court ruled on and considered critical. Which states that an act of sexual molestation cannot be an act for the benefit of the principal. Those cases exist in the context of respondeat superior. And they say over and over again that an act of molestation cannot be in furtherance of the business of the principal. And there are also jurisdictional cases. The one that I would draw the court's particular attention to is the Powers of Barnhardt case. That is a northern district of New York case. It deals precisely with this issue. It deals precisely with whether or not a coach on a volleyball team who had an acts of sexual molestation while in New York but was otherwise stationed elsewhere. Could that satisfy the requirements of A2? And the court held it could not precisely because those acts could not benefit, do not benefit the principal. What about the Love v. West case? Sorry? The Love v. West case, did it go the other way? There's the Love case. And by the way, my brother stood up and said there's this mountain of cases that are going the other way. As far as I understand the record before this court, there were two. There's the Love case and there's the Doe v. Hilliard case, the one that was mailed to the court. Those are the only two that I recollect seeing in any of these papers that go in a different direction. And I think the district court's analysis of Love is right on. That case dealt with the generalities of jurisdiction, but it did not deal at all with the element with respect to whether or not the actions of the perpetrator benefited the principal. That line of cases is simply not discussed. The reasoning of Barnhart is not discussed. And it's one of the critical elements of jurisdiction, and it cannot, cannot be met here. And that case, the Love case and also the Hilliard case, simply don't address those issues, and this court shouldn't ignore that line of case law. The district court actually pointed out that there's a long line of cases that hold that unanimously when the issue was dealt with. The second finding in the district court with respect to A2 was that there was not knowledge and consent of the Rhode Island defendants. And Judge Stein, I think you have it exactly right. There is nothing in this complaint, and this is what the district court held, there is nothing in this complaint that points to these appellees having any knowledge with respect to Magaldi. It is plaintiff's burden. My brother talked about the liberal standards of jurisdiction. It is the plaintiff's burden to present a prima facie case, and that complaint does not mention any knowledge or any consent on behalf of the appellee defendants. If I can, I'd like to jump to 302A1. That's the only other basis for application of jurisdiction to these defendants, and that has to do with holding a non-domicile jurisdiction here based on the transaction of business. And with respect to the transaction of business, let's make clear that there's basically two alleged transactions of business in this case. One, that Father Magaldi came down to New York to meet with Klaus von Bulow to solicit a donation, and two, to talk about some evidence with respect to a murder trial that he was involved in. Those are the only two so-called business transactions. We briefed the issue of whether that counts as business. I don't want to address that. What I want to address is the requirement that's clear under New York law, both from this court and from the New York Court of Appeals, that the business has to bear some nexus to the court. There has to be some nexus. And I would suggest to you that having a conversation with Klaus von Bulow, as interesting as he might be, about a donation and about his test of the evidence that might be presented, have no nexus to child molestation. It's not enough, and the cases make clear, it's not enough that there's some causal connection, which is the sum and substance of plaintiff's argument. Magaldi came down. The plaintiff came down. Because they came down, they were in New York and there was an act of molestation. It has to be more than that. It has to be that, and there's a quote from the district court opinion that I'd like to read. Oh, no, that's the wrong one. But it has to be that there's a nexus that's not just causation or a causal connection. And the best fan lines case from the Second Circuit stated it must be some articulable nexus between the claims asserted in the transactions and business. And I would submit to you that that doesn't exist here. And I'd like to call the court's attention to one particular part of the record that I think is really compelling here, and that is it actually comes from the plaintiff's second amended complaint. And it's page 826 of the record, and it's paragraph 73 of the second amended complaint. And if I could, I'd like to read a part of it. It's a quote of a letter from Klaus von Bülow to Father Magaldi. It says, I want to thank you for your kindness and courage in braving the storm and airport delays and coming to meet me in New York. Had I been able to connect with you in Boston, I would gladly have faced the problem myself. We were, however, rewarded with a very enjoyable evening, and I'm grateful for you. I want to repeat my wish to consult with you in finding an acceptable charity for donating my royalties. Skip a sentence. I will be happy to meet with you in Providence, Boston, or New York at your convenience. I would submit to you that there's no nexus between what Father Magaldi did in New York and the claim. It was purely serendipitous. They could have met in Boston. They could have met in Providence. They could have met in New York. Where it happened has nothing to do with the claim, and I think that's dispositive. So I would also suggest to the court that that's dispositive of the due process argument, which we also make alternatively. And I quote Walden v. Fiore. It's a U.S. Supreme Court case from 2014. Due process requires that a defendant be held into court not based on his own affiliation with the state, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the state. That's this case. Spot on. I only have five seconds left, so I guess I will rely on my papers with respect to the claims preclusion argument, but I think that is equally compelling, and this court can and should address that as another means to affirm the judgment. Thank you, counsel. Mr. Phillips, you're reserved three minutes. I'll speak quickly if I can. Your Honors, there is a mountain of cases, and just quickly, without dwelling on it, and also with respect to a comment that Judge Stein made when he was questioning me. In these cases, I will suggest that the claimant should be held into court not based on his affiliation with the state, and I will suggest that there was no more evidence of prior knowledge in those cases than there is in this case. There's Farrell v. the U.S. Olympic Paralympic Committee at 587 F. Sub. 3rd, 378 Northern District, 2021. Love v. West that Judge Park had alluded to. The P.C. Doe v. Hill Regional Career case by Justice Love, and a relatively brand new one decided on December 16th, 2022, and I'll send a letter with a citation called A.R.K. 644 Doe v. The Archdiocese of New York. In all four of those cases, and there are others as well, I would submit, there were the situation involved in one case a ice skating mentor of a ice skating young lady who was underage and was abused in New York. There was no indication that there was prior knowledge about this, and the court said no for jurisdiction. That's fine. In Love, this is bringing children up from Mississippi. Again, the same story is here. In A.R.K. 644, that's the Diocese of Burlington, Vermont. A priest came to New York, to Brooklyn, abused kids. Again, same story, no prior notice. In P.C. Doe, which is a case of my firm, this was not even an employee acting as an agent. This was the New Haven school system sending kids to Carnegie Hall, where someone supervising the kids sexually abused a youngster at Carnegie Hall. I think if you examine those cases and appreciate that, and I'll give you a quick hypothetical. Imagine that instead of Providence, this whole transaction involved the Buffalo Diocese, so there was no jurisdictional question. Ask yourself, under the New York jurisprudence, because the flaw with my brother's argument is a flaw that says this. The abuse is never for the purpose of a church or a school or an athletic committee or any of those things. The abuse becomes tortious, and the whole point of the CVA statute, which is what has unleashed this litigation, is the determination by the New York state legislature that there was a need for a remedial statute that had to be liberally construed. And the entire jurisprudence is not a jurisprudence that might have existed 20 years ago that says, well, we have to look at the fact that the out-of-state institution is not responsible in the business of raping kids. That's not the issue. The issue, and I think that, Your Honor, Judge Stein, you put your finger on it, is foreseeability and the adequacy of the pleading. Lastly, on this issue preclusion, I would make this point. The Supreme Court of Rhode Island has before it, and it's sub judici, it's been argued but not decided, the question of whether the trial court judge in Rhode Island erred in ignoring completely the New York nature of that claim. So, this is not a closed book from the perspective of this court. And I'd make a last observation. This is a new and important area of litigation. Justice Love, who's decided two of the cases I've cited, has a thousand of these cases before him, And if this is viewed by Your Honor, or if Your Honors have any doubt about it, there's an option available to you that would not be available to most other courts. You can ask the Court of Appeals in Albany to answer this question. And I would suggest, with all respect, that if you look and scrutinize, and this is a matter of profound importance, not only to this plaintiff, Philip Eduardo, but to scores of other plaintiffs, if the defendant prevails here, it's going to stand for the proposition that there can never be ab initio, these kinds of complaints, because no one ever intended. The nexus is they came to New York and subjected themselves to the jurisdiction of this state, and that's a but-for circumstance with respect to the circumstances here. Thank you, counsel. Thank you. Thank you both. We'll take the case under advisement.